IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRENDA L. PETERSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13-0329-CV-W-ODS |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff's medical records stretch back to the early 2000s. Given that Plaintiff's alleged onset date is December 2, 2009, and Plaintiff's medical condition has changed markedly over time, the Court will not detail the entirety of Plaintiff's medical history. The following summary will suffice.

Plaintiff was born in December 1960 and earned her GED. She worked as a painter with her boyfriend for approximately two years from an unspecified time in 1999 to 2001. Plaintiff's boyfriend was physically abusive, and the medical records document numerous injuries caused by his abuse. Plaintiff shot and killed her boyfriend; she was convicted of second degree murder and began serving her in May 2001. She was released from prison in November 2009.

Prison medical records from September 2002 reflect that Plaintiff was taking psychotropic medication when she reported complaints of depression. R. at 174. She was diagnosed as suffering from PTSD due to a combination of the abuse inflicted by

her boyfriend as well as abuse she suffered before then. R. at 175. In April 2009 it was noted that Plaintiff was no longer taking medication, R. at 189: it is not clear when she was taken off the medication, but it appears that medication was discontinued in January 2003. R. at 178. Regardless, it is clear that Plaintiff was not receiving medication and was relatively symptom-free for a significant period of time. A similar report was made in May 2009. R. at 191. In June 2009, Plaintiff's GAF score was assessed at 60. R. at 191-92. In July 2009, it was reported that Plaintiff "has not taken medication for a long time and is doing fine without it" and no further follow-up was necessary. R. at 192.

Plaintiff filed her application for benefits in December 2009 – approximately one month after she was released from prison. Early in January 2010, Plaintiff underwent a consultative psychiatric exam performed by Dr. Donald Simmons. She described symptoms much different from those reported to the prison doctors: she experienced nightmares, crying spells, diminished energy, and "good days and bad days." She also told Dr. Simmons the medication she took in prison "didn't work." Based on Plaintiff's reports (and without the benefit of her medical records), Dr. Simmons assessed her as suffering from major depression with psychotic features and PTSD and rated her GAF at 40. R. at 302-04.

In September 2010, Plaintiff began seeking treatment at Truman Medical Center ("TMC"). She was told to return for a full intake appointment in mid-October, at which time she expressed a desire to be returned to medication. She complained of "depression, anxiety, poor sleep, crying spells, and" a lack of direction. A full psych evaluation was arranged. R. at 402. Eventually, she was prescribed Celexa. R. at 390. Her GAF when the Celexa was first prescribed was 55. R. at 389. Plaintiff was then treated regularly with individual psychotherapy and medication with good results; her GAF ranged between 55 and 60.

Plaintiff was diagnosed with Hepatitis C in 1984. She was monitored and received treatment while in prison, but there no records of any limitations associated with this condition. Blood tests performed in July 2009 were within normal limits except for indicating slight liver damage due to the Hepatitis C. In January 2010 Plaintiff underwent a consultative examination performed by Dr. Craig Lofgreen. Plaintiff's liver

2

was firm, which was consistent with her Hepatitis C. Otherwise, she was not distressed, her extremities were normal, and had no difficulty flexing at the waist. The written report described "an essentially benign normal physical exam except for evidence of chronic hepatitis. . . . [S]he appears likely to be able to stand or walk for up to 2 hours per day and she has normal use of the upper extremities." R. at 308.

The Record also reflects Plaintiff's complaints of chronic pain (probably due to arthritis or osteoarthritis) but she consistently demonstrates a normal range of motion. E.g., R. at 378. She has been instructed to take ibuprofen. R. at 379. Finally, the Record reflects a series of singular ailments (e.g., a broken finger, a cyst on her foot) that do not affect her residual functional capacity and are not expected to be an issue for more than one year.

During the hearing, Plaintiff testified that her hands swell a couple times per week, she is unable to hold objects in her right (dominant) hand, she experiences headaches daily that last between twelve to twenty-four hours, she forgets things and can only stay on task for a couple of hours at a time, can sit for only thirty minutes, stand for one hour, walk for one block, and can lift no more than five to ten pounds. R. at 38-41. She also testified that she alternates between sleeping too much and not being able to sleep, and frequently spends a significant amount of time during the day sleeping. R. at 42-43.

A Vocational Expert ("VE") described Plaintiff's past relevant work as a painting laborer and a factory laborer. The latter job relates to Plaintiff's work in the sewing factory while in prison. R. at 33-34, 46. The ALJ posed a hypothetical question to a vocational expert ("VE"). The hypothetical described a person of Plaintiff's age, education and experience who could push and pull 20 pounds occasionally, ten pounds frequently, stand and walk six hours a day, sit six hours a day, and who was limited to repetitive work without detailed instructions or tasks. The VE was asked to describe any unskilled work such a person could perform, and the VE identified laundry sorter, personal care assistant, and small parts assembler. R. at 46-47. In response to questioning from Plaintiff's counsel, the VE testified that (1) a person with major depression that kept them off task for one-third of the day could not work, (2) a person who was required to lay down during the workday could not work, and (3) a person who

3

was unable to perform fine manipulation could not perform work as a small parts assembler but could work as a laundry sorter or personal care attendant. R. at 47-48.

The ALJ did not find Plaintiff's testimony to be credible and found Plaintiff's residual functional capacity ("RFC") was consistent with his hypothetical question to the VE. He reached this decision because the limitations Plaintiff described during the hearing had not been described by her to her doctors and the medical evidence did not support (and in some respects contradicted) the limitations she described. He gave Plaintiff "the benefit of the doubt" and held Plaintiff's Hepatitis C "arguably" limited her in the manner described in the RFC, but found the condition did "not preclude her from all work activity." R. at 22-23. Based on the VE's testimony, the ALJ found Plaintiff could perform work in the national economy.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Assessment of Pain

Plaintiff contends the ALJ failed to properly assess her subjective complaints of pain, then compounded that error by failing to include limitations based on pain in his

4

hypothetical question to the VE. The Court concludes the ALJ's determination is supported by substantial evidence in the Record as a whole.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>    1. The claimant's daily activities;
>    2. the duration, frequency and intensity of the pain
>    3. precipitating and aggravating factors;
>    4. dosage, effectiveness and side effects of medication;
>    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The ALJ properly considered these factors. He noted differences between Plaintiff's testimony during the hearing and Plaintiff's statements to doctors. He noted the medical evidence does not support the degree of pain she alleged. He noted

5

Plaintiff's daily activities are inconsistent with the pain limitations she described. He also noted Plaintiff's pain was treated rather conservatively; lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994).

Plaintiff's argument essentially restates her testimony and posits that the ALJ should have believed her: however, she does not identify any legal errors made by the ALJ. Judging credibility generally, and weighing the Polaski factors specifically, is uniquely the province of the ALJ. Absent legal error, the ALJ's finding must stand.

### B. RFC Determination

Plaintiff argues the RFC determination was infirm because there was not enough medical evidence to support it. The argument is somewhat curious, as it attempts to transform the absence of medical evidence supporting Plaintiff's claim into a strength. There are two problems with Plaintiff's theory. First, it ignores the fact that it is Plaintiff's burden to demonstrate she is disabled. Plaintiff cannot avoid this obligation by claiming the absence of evidence requires the Commissioner to prove she is not disabled. Second, Plaintiff overstates the law by contending there must be medical evidence that precisely supports each component of the RFC. While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities.

## III. CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                                 /s/ Ortrie D. Smith
                                                 ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 3, 2013                      UNITED STATES DISTRICT COURT